UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NJSR SURGICAL CENTER, L.L.C., NEW JERSEY SPINE & REHABILITATION, P.C., and POMPTON ANESTHESIA ASSOCIATES, P.C., <br><br> Plaintiffs, <br><br> v. <br><br> HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC.; NEW JERSEY TRANSIT CORPORATION; ANTHEM HEALTH PLANS, INC.; COUNTY OF PASSAIC; CAREFIRST OF MARYLAND, INC.; HEALTHNOW NEW YORK, INC.; CITY OF JERSEY CITY; ORANGE-ULSTER SCHOOL DISTRICTS HEALTH PLAN; NON-NEW JERSEY BCBS HOME PLANS 1-10, and ABC SELF-FUNDED PLANS 1-10 <br><br> Defendants. | Civ. No. 12-753 (KM) <br><br> OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiffs are health care providers; Defendants are health care insurers or administrators of health insurance claims. Plaintiffs allegedly rendered medical care to persons who were insured under Defendants' plans. The Third Amended Complaint (referred to herein as the "Complaint") alleges that Defendants wrongfully denied, underpaid, or simply disregarded the patients' claims for reimbursement. Plaintiffs sue as alleged assignees of their patients' right to pursue payment under the health insurance plans.

Some of the health plans at issue are self-insured plans governed by the Employee Retirement Income Security Act (ERISA). As to these ERISA plans, Plaintiffs seek compensatory damages and attorneys' fees from the plan provider under ERISA, 29 USC § 1132(a)(1)(B) and § 1132(g)(1). Other health plans at issue are fully-insured non-ERISA plans. As to those non-ERISA plans, Plaintiffs assert state law claims for breach of contract.

**Claims and Defendants**

The Complaint has three counts. Count 1 is brought under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Count 2 is brought under Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1). Count 3 is a state law claim for breach of contract. Count 3 is seemingly intended as a backstop or catchall for all claims brought under non-ERISA plans. *See* Complaint ¶35.

The Defendants named in the Complaint are:

Horizon Blue Cross Blue Shield of New Jersey, Inc. ("Horizon")
New Jersey Transit Corporation ("NJT")
Anthem Health Plans, Inc. ("Anthem")
County of Passaic
CareFirst of Maryland, Inc. ("CareFirst")
HealthNow New York, Inc.
City of Jersey City ("Jersey City")
Orange-Ulster School District Health Plan
Plus fictitious parties,
Non-New Jersey BCBS Home Plans 1-10;
ABC Self-Funded Plans 1-10

NJT and CareFirst filed the motions to dismiss that are currently before the Court.

Confusingly, the Complaint lumps together the actions of Defendants. Each count, moreover, lists only the Defendants to whom it is *not* directed. Count 1 and Count 2, both ERISA claims, state that they are "not directed to NJ Transit or Jersey City." Count 3 states that it is "not directed to Anthem or CareFirst."

Logically, an individual insurer might sponsor an ERISA plan, a non-ERISA plan, or possibly both. From this, I might surmise that the Venn-diagram organization of this Complaint is intended to reflect that in some way. Farther than that I cannot go.

One Defendant, Horizon Blue Cross, may only have allegedly acted as an administrative servicer. It is identified as a "health service corporation." (Complaint ¶ 8) The only other allegations specifically referring to Horizon state that it provided administrative services for the twenty unidentified fictitious Defendants. (Complaint ¶¶ 16, 17). Again, it is difficult to know what to make of this.

Defendants NJT and Jersey City are explicitly excluded from the ERISA counts. That would tend to imply that they are alleged to have been involved *only* in non-ERISA plans. NJT and Jersey City each face a single count of common law breach of contract (Count 3 of the Complaint). NJT has moved to

2

dismiss the single claim against it pursuant to Federal Rule of Civil Procedure 12(b)(1). NJT argues that this Court does not possess subject matter jurisdiction over such a claim because, by statute, a claim against this state entity can be brought only in state court. For the reasons discussed below, I will grant this motion.

CareFirst and Anthem are explicitly excluded from the non-ERISA count, Count 3. That would tend to imply that CareFirst and Anthem are alleged to have been involved *only in* ERISA plans. They are named only in Counts 1 and 2 of the Complaint, the ERISA counts. CareFirst and Anthem moved to dismiss the ERISA claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6). Anthem has withdrawn its motion, leaving only CareFirst. CareFirst also seeks a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). CareFirst argues that the complaint inadequately pleads (a) that the Plaintiffs possess derivative standing to bring ERISA claims assigned to them by their patients; and (b) that plaintiffs have exhausted administrative remedies or that exhaustion would be futile.

Because the Complaint's allegations of derivative standing are insufficient, I grant CareFirst's 12(b)(6) motion in part, but afford Plaintiffs leave to file an amended complaint. CareFirst's 12(e) motion for a more definite statement is denied. Frankly, however, this Complaint is vulnerable. When drafting their amended complaint, Plaintiffs would do well to specify which Defendants did what, which plan was involved, and the basis for resulting liability.

The motions are decided without oral argument. *See* Fed. R. Civ. P. 78(b).

**DISCUSSION**

### A. **NJT's Rule 12(b)(1) Motion to Dismiss**

NJT, one of two Defendants facing only state law claims, is named only in Count Three, the breach of contract count. NJT moves to dismiss the complaint pursuant to Rule 12(b)(1). NJT argues that, as a State entity, it cannot be sued for breach of contract in federal court, citing the New Jersey Contractual Liability Act ("CLA"), N.J. Stat. Ann. § 59:13-4.

Motions pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss a complaint for lack of subject matter jurisdiction may be raised at any time. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 437-38 (D.N.J. 1999). Rule 12(b)(1) challenges may be either facial or factual attacks. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). "A motion to dismiss on the basis of Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction made prior to the filing of the defendant's answer is a facial challenge to the complaint." *Bennett v. Atlantic City*, 288 F. Supp. 2d 675, 678 (D.N.J. 2003)(citing *Mortensen*, 549 F.2d at 891). A facial challenge asserts that the

complaint does not allege sufficient grounds to establish subject matter jurisdiction, *Iwanowa*, 67 F. Supp. 2d at 438; *Lennox Underground Found., Inc. v. Geron*, 2013 U.S. Dist. LEXIS 22879, *6-8 (D.N.J. Feb. 20, 2013)(reviewing factual allegations to determine, on 12(b)(1) motion, whether to exercise supplemental jurisdiction), or that there is a legal bar to the court hearing the case, such as sovereign immunity, *Bennett*, 288 F. Supp. 2d at 679-680; *Nunez-Torres v. State of New Jersey*, 2012 U.S. Dist. LEXIS 168172 *4-7 (12(b)(1) analysis applies when issue is extent to which state waived sovereign immunity under statute such as New Jersey Tort Claims Act). Upon review of a facial challenge, the Court views the Complaint in the light most favorable to Plaintiffs. *Bennett*, 288 F. Supp. 2d at 678; *Mortensen*, 549 F.2d at 891.

New Jersey is a sovereign State, and it is well-settled that NJT is an agent or arm of the State.[1] As such, NJT cannot be sued unless the State has

---

[1] It has repeatedly been held that NJT stands in the shoes of the State for purposes of the Eleventh Amendment immunity, which extends "not only to cases where the state itself is a party to the suit, but also to suits against state agencies, instrumentalities and officers where the state is, in fact, the real party in interest." *Rockwell v. New Jersey Transit Rail Operations, Inc.*, 682 F.Supp. 280, 282 (D.N.J. 1988) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Worrell v. New Jersey Transit Bus Operations*, 1987 U.S. Dist. LEXIS 474, *9-10 (D.N.J. Jan. 28, 1987).

Some of NJT's attributes as a State entity were summarized by Judge Stern as follows:

> New Jersey Transit was created by the New Jersey Public Transportation Act of 1979, L.1979, c. 150, codified at N.J.S.A. § 27:25–1 *et seq.*, as the successor of the Commuter Operating Agency of the New Jersey Department of Transportation. It is "established in the Executive Branch of the State Government" as "a body corporate and politic with corporate succession," and is allocated within the Department of Transportation. N.J.S.A. § 27:25–4(a). The corporation is "constituted as an instrumentality of the State exercising public and essential governmental functions" and the exercise of its powers is "held to be an essential governmental function of the State." *Id.*

> The powers of the corporation are vested in a seven-member governing board consisting of the New Jersey Commissioner of Transportation, the State Treasurer and another member of the Executive Branch selected by the Governor, who sit *ex officio,* and four public members appointed by the Governor with the advice and consent of the Senate. N.J.S.A. § 27:25–4(b). The Commissioner of Transportation chairs the board and is given the power to review New Jersey Transit's expenditures and its proposed budget. N.J.S.A. § 27:25–20(a). The Legislature has declared, however, that the corporation is "independent of any supervision or control by the [Transportation] department or by any body or officer thereof." N.J.S.A. § 27:25–4(a). Board members may be removed from office by the Governor for cause, N.J.S.A. § 27:25–4(b), and the Governor

waived its sovereign immunity. And that sovereign immunity applies in federal court by virtue of long-standing Supreme Court interpretations of the Eleventh Amendment. *E.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-01 (1984); *Edelman v. Jordan,* 415 U.S. 651 (1974); *Hans v. Louisiana,* 134 U.S. 1, 11 (1890).[2]

A federal court may find that a State has waived its sovereign immunity only "by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Edelman,* 415 U.S. at 673. It is also well-settled that a State may set conditions on any waiver of its sovereign immunity. In particular, a State may confine claims against itself to its own courts. *Ritchie v. Cahall,* 386 F. Supp. 1207, 1208 (D.N.J. 1974) ("even when a state consents to suit in its own courts, it does not follow that a similar suit may be maintained in the federal courts"). A claim against the State could be heard in this federal court only if I found a "clear declaration of the state's intention to submit [such a case] to other courts than those of its own creation." *Great Northern Ins. Co. v. Read,* 322 U.S. 47, 54 (1943); *see also Smith v. Reeves,* 178 U.S. 436 (1900).

For breach of contract claims, the State has waived its sovereign immunity by statute, but that waiver is not unlimited or unconditional. For the reasons expressed below, I conclude that the New Jersey CLA, N.J. Stat. Ann. § 59:13-4, provides that breach of contract claims can be brought against the State, but only in the courts of the State of New Jersey. They cannot be brought in this federal court.

I start, as always, with the wording of the statute. The CLA provides:

> The courts of competent jurisdiction of the State of New Jersey shall have jurisdiction over all claims against the State for breach of a contract, either express or implied in fact. Contract claims against the State shall be heard by a judge sitting without a jury. Except as otherwise expressly provided herein, all suits filed against the State under this chapter shall be

---

has veto power over any action taken by the Board. N.J.S.A. § 27:25–4(f).

*Gibson-Homans Co. v. New Jersey Transit Corp.,* 560 F. Supp. 110, 112-13 (D.N.J. 1982) (analyzing whether NJT was alter ego of the State for diversity purposes, which is "the same analysis required in order to determine whether New Jersey Transit is immune from suit under the Eleventh Amendment").

2  The Eleventh Amendment itself applies only to suits "against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. Supreme Court precedent, however, including the cases cited above, establishes that it incorporates a more general principle of sovereign immunity.

5

in accordance with the rules governing the courts of
the State of New Jersey.

N.J. Stat. Ann. § 59:13-4.

"The courts ... of the State of New Jersey shall have jurisdiction...." *Id.* That is clear enough. Less clear is whether that state-court jurisdiction is exclusive, *i.e.*, whether a federal court may also hear such a breach of contract claim (assuming other federal jurisdictional prerequisites are met). NJT contends that the CLA "explicitly states" that "only" the New Jersey courts may hear CLA suits. Not quite.

It is highly suggestive, however, that "all suits filed against the State under this chapter shall be in accordance with the rules governing the courts of the State of New Jersey." *Id.* Those rules by definition apply only in the courts of New Jersey. *See, e.g.,* N.J. Ct. R. 1:1-1 ("Unless otherwise stated, the rules in Part I are applicable to the Supreme Court, the Superior Court, the Tax Court, the surrogate's courts, and the municipal courts.")[3] And as every law student knows, under the *Erie* doctrine and the Rules Enabling Act, 28 U.S.C. § 2072, federal courts sitting in diversity apply state substantive law and federal procedural law; state procedural rules apply only in state court, unless they have a peculiar substantive dimension. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427-428 (1996); Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4510.

The wording of the CLA, then, is fairly clear. It very strongly implies that contract claims against the State must be brought in State court.

Further confirming my interpretation of the CLA is the more developed case law interpreting a parallel statute, the New Jersey Tort Claims Act ("TCA"), N.J. Stat. Ann. § 59:9-1 *et seq.* The TCA does for tort actions what the CLA does for contract claims: It waives sovereign immunity so that the State may be

---

[3] Part II of the New Jersey Court Rules applies "in the Supreme Court and the Appellate Division of the Superior Court." N.J. Ct. R. 2:1. Part III governs criminal proceedings "in the Superior Court Law Division" as well as certain criminal proceedings in municipal and family court. N.J. Ct. R. 3:1-1. Part IV governs "the practice and procedure of civil actions in the Superior Court, Law and Chancery Divisions, the surrogate's courts and the Tax Court except as otherwise provided in Part VI and Part VIII." N.J. Ct. R. 4:1. Similarly confined to the state courts are Part V (family actions), Part VI (Special Civil Part, or small claims), Part VII (municipal court), and Part VIII (Tax Court).

It is possible that "in accordance with" State rules might mean something less than "governed by" State rules—*i.e.,* that a federal action should not be *inconsistent* with the dictates of State procedure. Guidance is lacking. In any event, I do not believe that interpretation would solve the *Erie* problem.

sued. The TCA and the CLA were enacted close together, and their effective dates were one month apart. *Compare* TCA, L.1972, c. 45, § 59:1-1, eff. July 1, 1972, *with* CLA, L.1972, c. 45, § 59:13-1, eff. June 1, 1972.

The TCA provides:

> [T]ort claims against a public entity or public employee acting within the scope of his employment shall be heard by a judge sitting without a jury or a judge and jury where appropriate demand therefor is made in accordance with the rules governing the courts of the State of New Jersey.

N.J. Stat. Ann. § 59:9-1.

Compared to the CLA, the TCA less clearly suggests that state court jurisdiction is exclusive. The TCA does not contain the CLA's initial admonition that the "courts ... of the state" shall have jurisdiction. TCA does parallel CLA in that it contains the phrase "in accordance with the rules governing the courts of the State of New Jersey." *Id.* The placement of that phrase in the TCA, however, may signify that it is only the issue of entitlement to a jury, not the "suit" as a whole, that must be governed by the State rules.[4]

Nevertheless, despite its more equivocal language, the TCA has repeatedly been held to authorize suit *only* in state court. This District Court has held that the TCA is a limited waiver of sovereign immunity which does not afford litigants the right to bring a tort suit against the State in federal district court.

In *Ritchie v. Cahall*, 386 F. Supp. 1207 (D.N.J. 1974), for example, the court started from the premise that it is "well settled that even when a state consents to suit in its own courts, it does not follow that a similar suit may be maintained in the federal courts." *Id.* at 1208. There, a defendant in an auto accident tort case had sought to implead the State *via* a third-party complaint. District Judge Cohen, interpreting the then-recently-enacted TCA, dismissed the third-party complaint, holding that the State could not be sued in tort in federal court. And he did so despite the potential for "piecemeal litigation" of the claims in State and federal court. *Id.* at 1209.

The *Ritchie* holding has been applied to NJT itself. *Worrell v. New Jersey Transit Bus Operations*, 1987 U.S. Dist. LEXIS 474 (D.N.J. Jan. 28, 1987) reviewed the status of NJT, confirming that it is a State entity for purposes of sovereign immunity and the Eleventh Amendment. *Worrell* dismissed a negligence complaint against NJT, ruling that it did not have subject matter

---

4   Not surprisingly, there is no case law guidance on this issue of interpretation, for a simple reason: As set forth below, TCA cases are properly brought only in State court, where the State rules indisputably apply, irrespective of the wording of TCA.

7

jurisdiction. Judge Sarokin wrote that "such action cannot be litigated in the federal courts.... Any proceeding for tort liability must be instituted in the state court." *Id.* at *9-10 (citing *Ritchie*).

The United States Court of Appeals, albeit in non-precedential opinions, has relied on *Ritchie* and upheld dismissals of tort claims because the TCA did not waive sovereign immunity as to federal court proceedings. *Hyatt v. County of Passaic*, 340 F. App'x 833, 837 (3d Cir. 2009) (not precedential) ("The TCA, which allows suits against public entities and their employees in state courts, does not expressly consent to suit in federal courts and thus is not an Eleventh Amendment waiver."); *Mierzwa v. United States*, 282 F. App'x 973, 976 (3d Cir. 2008) (not precedential) ("[t]he State of New Jersey did not, in enacting the TCA, waive its sovereign immunity as to § 1983 claims in federal court."). *See also Brown v. Ancora Psychiatric Hosp.*, 2012 U.S. Dist. LEXIS 146251, *8-9 (D.N.J. Oct. 11, 2012) (Bumb, J.) ("Although the New Jersey Tort Claims Act permits suit against public entities and their employees in state court, it does not expressly permit suit in federal court and therefore does not constitute an Eleventh Amendment waiver.").

The TCA, then, provides a parallel, indeed *a fortiori*, case, and it confirms my interpretation of the CLA. I hold that the State of New Jersey has not waived its immunity to breach of contract actions brought in this federal court. Consequently, this Court lacks subject matter jurisdiction over the breach of contract claim against NJT, a State entity.[5]

In addition, even if these breach-of-contract claims were not barred by sovereign immunity, I would dismiss them. These are pure state law claims. As to them, the complaint does not plead diversity of citizenship or the existence of a federal question. *See* 28 U.S.C. §§ 1331, 1332. To maintain these claims in federal court, Plaintiffs would have to invoke this court's supplemental jurisdiction under 28 U.S.C. § 1367. A proper pendent claim is one that is "so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). The test is whether the claims have a "common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Plaintiffs argue that their federal-law ERISA claims against Horizon and their state-law claims against NJT have a common nucleus. Plaintiffs assert that Horizon's role ties it all together, *i.e.*, that Horizon's administration of

---

[5] I add that a claim against the State, barred by sovereign immunity and the Eleventh Amendment, cannot be kept in federal court *via* supplemental jurisdiction under 28 U.S.C. § 1367. Even if related claims against other defendants are properly in this Court, claims against non-consenting State defendants must be dismissed and relegated to the State courts. *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541-42 (2002); *Brown v. Ancora Psychiatric Hosp.*, 2012 U.S. Dist. LEXIS 146251, *8-9 (D.N.J. Oct. 11, 2012) (citing *Raygor* in relation to New Jersey TCA).

8

NJT's non-ERISA plan "is the factual predicate" for ERISA claims against Horizon. (*See* Pltf's Br. Opp. NJT's Mot. to Dismiss at 9). That cannot literally be true. A third-party administrator such as Horizon is subject to suit under ERISA for wrongful conduct in administering an ERISA plan. *See Briglia v. Horizon,* 2005 WL 1140687 at *5-7 (D.N.J. May 13, 2005) (Wolfson, D.J.), (finding that where administrator acts as a fiduciary administering a self-funded *ERISA plan,* the administrator may be subject to an ERISA suit). Any liability for administering NJT's self-funded, non-ERISA plan, however, does not arise under ERISA, but under state common law. *See* Pltf's Br. Opp. NJT's Mot. at 3; Bsales Cert. at ¶¶ 3-4.

The legal issues in the federal and state claims, then, would be distinct. Moreover, the facts, even if Horizon's administration of the two kinds of plans was similar, would not be identical. And frankly it is difficult to extract from the Complaint, even generally, what Horizon's role is alleged to be with respect to any particular ERISA or non-ERISA plan.

Further complicating the picture is the allegation, in ¶23 of the Complaint, that Plaintiffs seek ERISA benefits only from the payors, and "are not requesting relief against a particular Defendant that provided administrative services only ('ASO') for the particular claim." The only specific allegations naming Horizon identify it as an administrator, not an insurer—and even that only as to the 20 fictitious parties. It follows that Plaintiffs may not even be asserting any claim against Horizon (although comments in their brief suggest they may be asserting one in relation to the NJT plan). This undermines any area of potential overlap between the federal ERISA claims and the state-law contract claims.

On this alternative ground, then, even if a waiver of sovereign immunity permitted the state-law contract claims to be asserted in federal court, I would decline to exercise supplemental jurisdiction over them. There is no need for me to reach NJT's additional arguments concerning failure to plead exhaustion of administrative remedies or failure to serve notice of claim as required by the CLA.

The motion of NJT to dismiss the complaint is **GRANTED**.

### B. CareFirst's 12(b)(6) Motions to Dismiss

CareFirst (formerly joined by Anthem, which has withdrawn its motion) has moved to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). The only claims asserted against CareFirst are ERISA claims. CareFirst contends that the Plaintiffs have not adequately pled (a) that they have derivative standing to bring ERISA claims by virtue of assignments from their patients; and (b) that they have exhausted administrative remedies

or that exhaustion would be futile. CareFirst also seeks a more definite statement of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(e).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). For purposes of a motion to dismiss, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by subsequent Supreme Court case law). In reviewing the well-pleaded factual allegations and assuming their veracity, this Court must "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

In reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), a court is limited to an examination of the facts as alleged in the pleadings as well as matters of public record, orders and exhibits attached to the complaint. *Yuhasz v. Poritz*, 166 F. App'x 642, 646 (3d Cir. 2006) (not precedential) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n. 2 (3d Cir. 1994)); *see also Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 600-601 (D.N.J. 2002).

*1. Derivative standing via assignments from patients*

ERISA confers standing to sue on a plan "participant," "beneficiary," or "fiduciary." *See* 29 U.S.C. § 1132(a). The Plaintiffs here, health care providers, do not claim to be any of these. Rather, they sue on behalf of their patients, who are ERISA plan participants or beneficiaries. The Complaint alleges that "the Patients provided assignments of benefits to the Plaintiffs." The Plaintiffs allege that, as assignees, they have standing to pursue their patients' claims. CareFirst does not dispute this as a general legal proposition. It contends, however, that the complaint does not allege with the requisite specificity that the Plaintiffs have obtained adequate assignments from their patients.

Health care providers, such as Plaintiffs, may assert their patients' denial of benefits claims against insurance plans when the provider has obtained an adequate assignment of the patient's right to benefits. In *Pascack Valley Hosp. v. Local 464A UFCS Welfare Reimbursement Plan*, 388 F.3d 393, 399-400 (3d Cir. 2004), the Court commented that many other circuit courts had expressly held that providers may have standing to assert such a claim "where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan." *Id.* at 401 n. 7. That seems to be a sound rule, and I will assume its validity for purposes of this motion. *See Wayne Surgical Ctr. V. Concentra Preferred Sys., Inc.*, 2007 WL 2416428, at *3-5 (D.N.J. Aug. 20, 2007) (Ackerman, J.). What it means is that a patient may authorize his or her

10

doctor to seek the reimbursement that the patient is owed under his or her health insurance plan.

The Third Circuit has not dictated how specifically a plaintiff must allege the existence and contents of the assignments on which its standing rests. In this District, however, the general standard for pleading derivative ERISA standing is fairly well settled: "Plaintiffs will meet their burden of establishing ERISA standing if their Complaint contains specific factual allegations to render plausible their claim that the Assignments they received from the Plan Participants conferred them with the right to receive the full benefits of that Plan." *Demaria v. Horizon Healthcare Servs., Inc.*, No. 11-cv-7298, 2012 WL 5472116 at *4 (D.N.J. Nov. 9, 2012) (Martini, J.); *see Premier Health Center v. UnitedHealth Group*, No. 11-425, 2012 WL 1135608 (D.N.J. April 4, 2012) (Salas, J.).

In *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792 (D.N.J. 2011), Judge Chesler found it insufficient that the consolidated complaints generally alleged that the patients/subscribers had assigned their plan benefits to the plaintiffs/health care providers. He held that "[s]imply asserting that ... subscribers have assigned their ... plan benefits fails to plausibly establish that each provider plaintiff has obtained at least one actual assignment of a plaintiff's right to assert a claim for benefits and pursue litigation under ERISA." *Id.* at 811. The complaints fell short because they failed to "plead facts (for example, actual assignment language) to support their legal conclusion that a valid assignment of the proper breadth was given by patients." *Id.* 811. Accordingly, Judge Chelser granted the motion to dismiss the ERISA claims.

In *Demaria, supra,* the plaintiffs alleged that they, "as a matter of course," obtain written assignments from plan participants enabling them to obtain reimbursements otherwise payable to the participants. Those plaintiffs did not, however, set forth the language of the assignments or attach copies of them. *Demaria,* 2012 WL 5472116 at *1. Judge Martini found those allegations to be ambiguous and conclusory as to the plaintiffs' ERISA standing; he granted the defendants' motion to dismiss the complaint, although without prejudice. *Id.* at *4-5.

In *Premier Health,* Plaintiffs quoted the assignments they allegedly obtained as stating that "THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY." Judge Salas found that by quoting the pertinent language, the Plaintiffs carried their pleading burden. She added that that it was not necessary to attach actual copies of the assignments. *Premier Health,* 2012 WL 1135608 at *6-7. *See also North Jersey Brain & Spine v. Conn. Gen. Life,* 2011 U.S. Dist. LEXIS 119762 at *17-18 (D.N.J. Oct. 6, 2011) (Arleo,

M.J., Report & Recommendation adopted by Wigenton, D.J) (finding that an allegation reciting an assignment of "all payments for medical services rendered" was adequate).

Here, the complaint alleges no more than that "the Patients provided assignments of benefits to the Plaintiffs." That conclusory allegation, resembling the ones found wanting in *Frando* and *Demaria*, falls short of what is required to withstand a motion to dismiss.

Pleading requirements aside, cases disagree as to what kind of an assignment is broad enough to confer ERISA standing. In one view, the typical authorization by which the patient permits the insurer to pay the provider directly is insufficient. To confer standing, the patient must relinquish and assign all plan rights and benefits, including the right to sue, to the plaintiff healthcare provider. *See MHA, LLC v. Aetna Health, Inc.*, 2013 U.S. Dist. LEXIS 25743 at *18-26 (D.N.J. Feb. 25, 2013) (Chesler, J.).

The contrary view is that, for these purposes, "there is no distinction between an assignment of the right to payment and an assignment of plan benefits." *North Jersey Brain & Spine*, 2011 U.S. Dist. LEXIS 119762 at *15. *See also Wayne Surgical Center v. Concentra Preferred Systems*, 2007 U.S. Dist. LEXIS 61137 at *11-12 (D.N.J. Aug. 20, 2007) (Ackerman, J.) ("It is illogical to recognize that [provider] as a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right."); *Premier Health*, 2012 WL 1135608 at *8 ("[A] right to reimbursement...must logically include the ability to seek judicial enforcement of that right.").

I will not take a side in this dispute here, because the distinction may turn out to be irrelevant, depending on the breadth of the assignments at issue. Plaintiffs have attached to their motion papers two sample assignments. I have not analyzed them extensively, but in form they are expansive, and might satisfy Defendants, even under the heightened standard espoused by Judge Chesler. *See* Certs. of Yesenia Torres, Exhibit A.[6] I do not prejudge the matter, but the Torres Certifications suggest that granting leave to amend would not be futile. *See generally* Fed. R. Civ. P. 15(a). The extent to which these samples are typical remains unknown. An amended complaint may reveal whether Plaintiffs can allege with the requisite specificity that their ERISA claims are in each case based on their having received an adequate assignment from a patient.

---

6     Anthem withdrew its motion to dismiss upon reviewing these assignments.

I will grant CareFirst's motion to dismiss without prejudice to Plaintiffs' filing of an amended complaint within 30 days. I do not reach questions relating to whether there is an effective anti-assignment clause in the plan policies of CareFirst, because I find factual issues, such as waiver, to be inappropriate for resolution on this motion to dismiss.

*2. Exhaustion of administrative remedies*

A court "may not entertain an ERISA section 1132(a)(1)(B) claim for benefits unless the plaintiff has complied with and exhausted all administrative prerequisites required by the plan itself." *Metz v. United Counties Bancorp.*, 61 F. Supp.2d 364, 382-3 (D.N.J. 1999). The complaint alleges generally that Plaintiffs have "exhausted all appeals or further appeals would be futile." The issue is whether this allegation is sufficiently concrete to withstand CareFirst's motion to dismiss. CareFirst contends that Plaintiffs should have identified the specific administrative appeals that have been pursued, and described any unpursued appeals that they contend would be futile. To be sure, the allegation has the appearance of boilerplate; nevertheless, I believe that it would not be practical to deal with the issue on the pleadings, and I will deny the motion to dismiss on this basis.

The requirement that a plaintiff have exhausted administrative remedies does not seem to embody any particular standard of pleading. Rather, it is ordinarily addressed with the aid of evidence adduced in discovery, typically on a motion for summary judgment. *Id.* (addressing issue on motion for summary judgment); *D'Amico v. CBS Corp.*, 297 F.3d 287, 290-93 (3d Cir. 2002)(court uses extrinsic evidence and converts Rule 12(b)(6) motion into Rule 56 summary judgment motion); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990)(addressing issue on appeal from summary judgment); *Utility Workers Union of Am. Local 601 v. PSE&G*, 07-cv-2378, 2009 WL 331421 at *3 (D.N.J. Feb. 10, 2009)(addressing issue with evidence on motion for summary judgment).[7]

---

[7] *Shepard v. Aetna Life Ins. Co.*, No. 09-cv-1436, 2009 U.S. Dist. LEXIS 69457 (E.D. Pa Aug. 7, 2009), is not to the contrary. Although *Shepard* denied leave to file an amended complaint on exhaustion grounds, it did not suggest any standard higher than notice pleading. The problem in that case was that the complaint did not plead exhaustion or futility *at all*. *Id.* at *10-11 ("Plaintiffs have not alleged that they availed themselves of the available administrative review mechanisms under the employer life insurance plan, nor have they claimed that availing themselves of these mechanisms would be futile.")

13

I will deny the motion to dismiss as to exhaustion of remedies. That issue may be addressed in a motion for summary judgment upon fuller development of the facts.

It is potentially a separate issue whether the futility of pursuing administrative remedies (as opposed to exhaustion of them) must be pled in a specific way. There is some support in this district for a requirement that the complaint's allegations of futility be "clear and positive." *See Menendez v. United Food & Commercial Workers Local 450T,* No. 05-1165, 2005 U.S. Dist. LEXIS 17034 at *1-2 (D.N.J. Aug. 11, 2005) (dismissing count of complaint for failure to allege exhaustion with particularity); *cf. Canale v. Yegen,* 782 F. Supp. 963, 971-972 (D.N.J. 1992) (requiring not just "bare allegations," but a "'clear and positive' showing" for plaintiff to prevail on a claim of futility). Futility, however, can be a fact-intensive inquiry, and therefore may be ill-suited for resolution on the pleadings. At least under the circumstances of this case, I think the better rule is that there is no special rule for pleading futility, and that the required showing, however "clear," is most appropriately made on summary judgment. *See North Jersey Brain & Spine Center v. Anthem Blue Cross,* 2012 WL 2952423 at *4 (D.N.J. 2012) (Cecchi, D.J.); *Stapperfenne v. Nova Healthcare Admins.,* 2006 WL 1044456 at *3-4 (D.N.J. 2006) (Kugler, D.J.) ("the Court cannot properly decide those issues on this Rule 12 motion when the Court's examination is limited to the Plaintiffs' pleadings.").

I will therefore deny CareFirst's motion to dismiss the complaint for failure to plead exhaustion or futility with the required specificity. Given that Plaintiffs will no doubt be submitting an amended complaint, they may wish to take this opportunity to plead these matters more specifically. In any event, however, Plaintiffs will furnish discovery regarding the pursuit of administrative remedies as to these claims, or their reasons, if any, to conclude that such pursuit would be futile. The Magistrate Judge may wish to consider whether early discovery directed to this threshold issue is appropriate. CareFirst or any defendant may raise these issues again at the summary judgment stage.

### C. CareFirst's Rule 12(e) Motion for a More Definite Statement

CareFirst briefly argues that a more definite statement under Rule 12(e) is required because Plaintiffs have sued numerous Defendants on the basis of numerous different transactions and occurrences, "the specifics of which are not identified by Plaintiffs." (CareFirst's Br. at 12). Indeed, Plaintiffs simply allege that "the denial or reduction of benefits spans numerous services and

claims with dates of service from June 23, 2009 through the present." (Third Amended Complaint ¶ 20). Their Complaint then describes the five different types of alleged violations committed by Defendants: medical necessity denials, credentialing denials, "no response to claims submitted," pre-certification denials, and underpayment, stating that "the specific patients, claims and dates of service that fall within each of the above five categories are not set forth herein so that the Plaintiffs may protect the identity and confidential health information of each Patient in accordance with HIPAA," but that it will provide each defendant with such details in discovery. (*Id.* at ¶¶ 21-22).

I will deny this motion as moot, since I have granted the motion to dismiss. The issue with respect to any amended complaint will be whether it "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed R. Civ. P. 12(e). In the current complaint, the claims are described generically by category. It appears, moreover, that the individual claims are numerous, and subject to confidentiality restrictions. A motion for a more definite statement might turn out to be more profitably pursued as a set of interrogatories. But the question will abide the filing of an amended complaint.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss of New Jersey Transit is **GRANTED** and the claims against it are **DISMISSED WITH PREJUDICE**; the Motion to Dismiss of CareFirst is **GRANTED IN PART;** and Plaintiffs are granted **LEAVE TO AMEND** their complaint within thirty (30) days; and the Motion for a More Definite Statement of CareFirst is **DENIED** as moot.

At pages 2-3, above, I expressed some difficulty in extracting from this Complaint the necessary information about which Defendants, which plans, and which allegations belonged together. I stated that the Complaint, as drafted, might be vulnerable to a motion to dismiss on that basis. This goes beyond group pleading to group pleading by implication; individual Defendants are left to infer what they are alleged to have done by virtue of their absence from the list of Defendants against whom counts are *not* asserted. Plaintiffs are admonished that, if any amended complaint does not evidence some effort to be clear about which claims are asserted against which Defendants with respect to which insurance plans, they proceed at risk.

An appropriate order follows.

                                                                                                  _____
                                                                                                  KEVIN MCNULTY
                                                                                                  United States District Judge

Date: October 24, 2013
Newark, New Jersey